J. H. MYERS *v.* STATE COMPENSATION COMMISSIONER

(No. 6899)

Submitted April 14, 1931. Decided April 28, 1931.

*R. E. Hughes, M. H. Bowyer,* and *J. B. Menager,* for petitioner.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

426

LITZ, PRESIDENT:

This is an appeal from the ruling of the state compensation commissioner, denying the claimant, J. H. Myers, further compensation after the allowance and payment of a final award.

Myers, at the age of 73 years, sustained an injury August 8, 1925, while employed as a blacksmith for the Campbell's Creek Coal Company in Kanawha County, by lifting a heavy box of mining machine bits, causing inguinal hernia. He was treated at the McMillan Hospital at Charleston from August 12th to August 14th. His formal application for compensation was filed August 20th. September 8th, Dr. U. G. McClure of the McMillan Hospital made an affidavit, at the instance of the compensation commissioner, stating that Myers had a small reducible right inguinal hernia; and that because of his poor physical condition and advanced age, an operation was not attempted. On September 9th, Dr. W. L. Barbour, in the service of the Coal Company, also made an affidavit at the instance of the commissioner stating that, in his opinion, the claimant had, before the injury, a relaxed inguinal ring which had caused hernia to develop from a sudden strain; that a suitable truss should give him proper support and that he found "no physical impairment that would make an operation unadvisable, except his age." January 18, 1927, the commissioner, in response to a letter from the claimant demanding compensation, replied that no compensation could be allowed in a case of hernia without an operation. March 11, 1927, Dr. Russel Kessel, medical examiner for the compensation department, after examining the claimant reported to the commissioner: "This man is 75 years of age, in fair physical condition, but on account of his advanced years in life I would not recommend an operation." June 22, 1927, the claimant was awarded $80.00. Dr. Russel Kessel, after reexamining the claimant, July 14, 1927, reported to the commissioner that the hernia had increased somewhat since his former examination and that on account of the age of the claimant, he would not advise an operation. On July 15, 1927, the commissioner wrote the claimant: "I find that in

looking over the file in your case that since you have returned to work you have worked with a fair degree of regularity, and do not seem to have any disability by reason of your injury. I take this occasion to advise that as the case stands at present further compensation does not ,seem to be due or payable.'' On September 17, 1927, Dr. Kessel advised the commissioner that he had found on another examination that the claimant was afflicted with a right hernia, "enormous in size," extending into the scrotum; that, in his opinion, he would not be able to undergo an operation, and suggested that he be granted 25% permanent partial disability. Dr. Raymond H. Lewellyn, employed by the coal company, in a letter to the compensation commissioner of August 19, 1927, says: "Mr. Myers of Putney has been under my care for the past thirteen or fourteen months. During this time his hernia has given him much discomfort and pain, and for many days at a time he has been unable to work. At all times when working he suffered intensely and states he is unable to heed my advice and stay at home as it is necessary for him to attempt to work. In my opinion his hernia and physical condition are of such nature that he is unable to withstand an operation for the repair of it even under local anesthesia.''

November 10, 1927, Dr. Kessel again advised that the claimant, in his opinion, could not undergo an operation. In a letter dated November 28, 1927, addressed to the compensation commissioner, Dr. Lewellyn says: "At your request, I am writing to you again in regard to the claim of Mr. J. H. Myers, No. 4330-32. I re-examined Mr. Myers on November 25, 1927, and at that time I found his hernia to have increased in size and to be more painful. His general condition has not improved and I am more firmly convinced at this time that he is unable to withstand an operation for the repair of his hernia even under local anesthesia.''

In a letter to the commissioner of February 21, 1928, concerning Myers, Dr. Lewellyn further states: "His condition at present time is virtually the same that it has been for the past two years; that is, that he has large inguinal hernia which, at his age, is inoperable and will continue to increase in size and become more painful. He is unable to work as

he has been for the past two or three years; although he attempted it to up to a few months ago. Since he ruptured himself his physical labor has always been painful."

Myers having been granted allowances from time to time, between June 22, 1927, and September 26, 1928, on the latter date the commissioner wrote him: "You are this day awarded compensation for one hundred weeks at the rate of $16.00 per week, or $1,600.00, payment to commence as of October 1, 1927, your injury being determined a 25% diasibility. This award will expire as of July 26, 1929, you having been paid compensation for 57 2/7 weeks or $832.00, as an open claim, leaving balance due on the award of $758.00. Check for $84.57, paying compensation for 5 2/7 weeks to September 30, 1928, will be mailed to you in a few days, in care of your employer at the time of the injury." After payments had been completed under this award, the claimant applied for further compensation by reason of which, on October 7, 1929, the commissioner wrote him: "After going over the files, I find that I must agree with my former ruling in which I stated to you that no further compensation could be paid in this claim." On November 21, 1929, the commissioner further advised the claimant by letter: "I regret to inform you that no further compensation can be paid you on your claim." It seems that the claimant continued to importune the commissioner for further allowances, and, receiving no response, presented his case to the governor who called the matter to the attention of the commissioner. In explanation of his action in refusing to grant further compensation, the commissioner wrote the governor on January 18, 1930, in part, as follows: "Myers is an old man about 75 years of age, has been a blacksmith by profession, and unfortunately has an old scrotal hernia of long standing. According to section 25 of the law, he should have never been on the Compensation Fund, but for some reason or other, he did get on without meeting the requirements of the law, which requirements are to the effect that cases of all hernia coming within the act, the patient must submit to radical operation. This has been explained to Mr. Myers on numerous occasions, and as I see it, Mr. Myers has no further compensation coming to him from

the Department." Without further action having been taken on the part of the commissioner, this appeal was granted September 15, 1930.

The record clearly shows that Myers has never been physically able to undergo the operation required by the commissioner; and that the commissioner's refusal to grant him further compensation is obviously due to a misconstruction of section 25 of the Compensation Act (Code 1923). This section, in part, reads as follows: "In all claims for compensation for hernia resulting from personal injury received in the course of and resulting from the employee's employment, it must be definitely proven to the satisfaction of the commissioner: First, that there was an injury resulting in hernia; second, that the hernia appeared suddenly; third, that it was accompanied by pain; fourth, that the hernia immediately followed an injury; fifth, that the hernia did not exist prior to the injury for which compensation is claimed. All hernia, inguinal, femoral or otherwise, so proven to be the result of an injury received in the course of and resulting from the employment, shall be treated in a surgical manner by radical operation. If death results from such operation, the death shall be considered as a result of the injury, and compensation paid in accordance with the provisions of section thirty-three. In non-fatal cases, time loss only shall be paid, unless it is shown by special examination that the injured employee has a permanent partial disability resulting after the operation. If so, compensation shall be paid in accordance with the provisions in section thirty-one with reference to permanent partial disability. In case the injured employee refuses to undergo the radical operation for the cure of said hernia, no compensation will be allowed during the time such refusal continues. If, however, it is shown that the employee has some chronic disease or is otherwise in such physical condition that it is considered unsafe for him to undergo said operation, he shall be paid as provided in section thirty-one."

The compensation commissioner has moved to dismiss the appeal; contending that his action in fixing the percentage of disability is not reviewable, and, if reviewable, that Myers

has lost his right of appeal by failing to object to the finding and to demand a hearing within ten days from notice thereof, and by failing to apply for an appeal within ninety days from an adverse ruling upon such hearing, as required by section 43, chapter 71, Acts 1929 (23-5-1, Code 1931). Counsel for claimant reply that the right of appeal is governed by the statute in force at the time of the injury. The situation, however, is not changed by adopting this theory, as the former statute (sections 43, chapter 15-P, Code 1923), also required the application for an appeal to be presented within ninety days after final action of the commissioner.

A careful consideration of the record justifies the conclusion that the commissioner, by misinterpreting section 25 of the Compensation Act (23-4-7, Code 1931), has acted without legal authority, but the claimant, after failing to appeal within the time prescribed, cannot now, by treating his petition for an appeal as an application for a writ of mandamus, thereby obtain relief. "The common law writ of mandamus is a prerogative writ invented for the purpose of supplying defects of justice, and issued where there was no other means of obtaining justice within the reach of the petitioner. Its object is not to supersede but to supply the want of a legal remedy; therefore to authorize its issuance, two facts must coexist, the right to have the particular act or duty performed and the want of an adequate or specific remedy at law. * * * In order to bar the issuing of the writ, it is not necessary that the other remedy be available at the time of applying for the mandamus, but if the petitioner had a clear legal remedy, adequate to enforce his rights, of which he failed to avail himself and which he lost through his own neglect, the writ will not lie." 18 R. C. L. 131.

The appeal is, therefore, dismissed as improvidently awarded.

*Dismissed.*